1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  2:99-cr-433  WBS AC

12          Plaintiff,

13      v.                                  FINDINGS AND RECOMMENDATIONS

14   SON VAN NGUYEN,

15          Defendant.

16

17          Petitioner Son Van Nguyen is a federal petitioner represented by appointed counsel,

18   before the court on a motion attacking his conviction and sentence pursuant to 28 U.S.C. § 2255.

19   ECF No. 1548 (amended motion).  Respondent has opposed the motion, and petitioner has filed a

20   traverse.  ECF Nos. 1557, 1560.

21                   FACTUAL AND PROCEDURAL BACKGROUND

22      I.      Procedural History

23          Petitioner was one of seven defendants charged in this Hobbs Act case.  A nine-count

24   indictment filed on October 1, 1999 alleged four separate conspiracies to commit four different

25   robberies affecting interstate commerce.  Petitioner was charged in relation to two of the

26   conspiracies.  Counts One through Three, at issue here, arose from a Stockton home invasion in

27   which several victims were restrained, beaten and tortured in order to extract information which

28   would allow the defendants to disarm the burglar system to a jewelry store and open the jewelry

1

store safes.  One of the victims, jewelry store owner Vuth Hong, was killed.  Petitioner was charged as follows in relation to this incident:

- Count One charged all seven defendants with Conspiracy to Commit a Robbery Affecting Interstate Commerce in violation of 18 U.S.C. § 1951(a) ("Hobbs Act robbery");
- Count Two charged all seven defendants with Use of a Firearm During a Crime of Violence in violation of 18 U.S.C. § 924(c)(1);
- Count Three charged all seven defendants with Death Caused by Use of a Firearm During a Crime of Violence, and Aiding and Abetting, in violation of 18 U.S.C. § 924(i).[1]

Counts Six and Seven of the indictment charged five of the seven defendants, including petitioner, with conspiracy and use of a firearm in relation to the robbery of a computer store in Sacramento.[2]  The other counts, which did not name petitioner, involved conspiracies to rob another Sacramento computer store on two different occasions.

The defendants were eventually severed into two groups for trial.  ECF No. 475.  Petitioner Son Van Nguyen and defendants Thy Chann and Bao Lu (aka Hoang Nguyen) were tried beginning on May 6, 2003 on Counts One through Three.  On June 9, 2003, the jury found petitioner guilty on all three counts.  ECF No. 524.  Petitioner's motions for judgment of acquittal pursuant to Fed. R. Crim. P. 29 and for a new trial pursuant to Fed. R. Crim. P. 33 were filed on July 18, 2003 and denied on September 17, 2003.  ECF Nos. 550, 551, 569.

Petitioner was sentenced on April 26, 2004 to life imprisonment plus 60 months consecutive.  ECF No. 641.  Petitioner appealed his conviction and sentence.  On May 25, 2006, the Ninth Circuit affirmed the conviction and remanded for resentencing pursuant to United States v. Ameline, 409 U.S. 1073 (9th Cir. 2005) (en banc).  ECF No. 771.  On November 19,

---

[1] Subsequently redenominated as § 924(j).
[2] Counts Six and Seven were severed and never tried.  On April 11, 2011, counsel for the government represented to Judge Shubb that a request to dismiss Counts Six and Seven would be submitted to the court.  ECF No. 1544.  The docket does not reflect that such a motion was subsequently filed.

1    2007, petitioner was resentenced to the same term.  ECF No. 1034.  He filed a notice of appeal on

2    November 29, 2007.  ECF No. 1039.

3          Petitioner filed a pro se motion under 28 U.S.C. § 2255 on June 18, 2007, prior to

4    resentencing.  ECF No. 860.  An amended pro se motion was filed on January 18, 2008.  ECF No.

5    1127.  The government answered on April 21, 2008.  ECF No. 1179.  Because petitioner's appeal

6    from resentencing remained pending, the motion was dismissed without prejudice as premature

7    on November 14, 2008.  ECF Nos. 1218 (Findings and Recommendations), 1230 (order adopting

8    Findings and Recommendations).  On August 19, 2009, the Court of Appeal affirmed the

9    sentence.  ECF No. 1301.[3]

10         Petitioner filed another § 2255 motion in pro per on April 12, 2010.  ECF No. 1431.

11   Following the appointment of counsel, ECF No. 1511, the motion was amended.  The action

12   proceeds on the amended motion filed June 28, 2011.  ECF No. 1548.

13         II.    Facts

14         Vuth Hong and his common law wife Sophorn Ork, owners of Phnom Pich jewelry store,

15   lived in Stockton with the couple's four young children and Hong's elderly mother.  On the

16   evening of January 25, 1996, the grandmother was preparing dinner when three armed men

17   forced their way into the house.  The intruders tied up the grandmother and children and began

18   searching the house for valuables.  Two other men, later identified as petitioner and Vinh Huynh,

19   entered the house.  The robbers waited for Vuth Hong to return home from the store.  As

20   additional family members and friends arrived at the house, they were also taken hostage.  The

21   five intruders took a total of eleven victims captive.  All were bound, and their mouths covered

22   with duct tape.

23         Vuth Hong, Sophorn Ork, and Vuth Hong's brother Srun Hong were taken to an upstairs

24   room where they were beaten, kicked and tortured over the course of several hours in an attempt

25   to obtain the codes to the jewelry store's alarm system and safes.  Vuth Hong was threatened with

26   a blow torch, and Sophorn Ork was threatened with a hot iron.  The intruders threatened to rape

27

28   ───────────────
     [3] The mandate issued on October 26, 2010.  ECF No. 1508.

1    Ms. Ork in front of her husband, and brought Hong's two-year old daughter to him and threatened

2    to kill her if he did not cooperate.  Vuth Hong repeatedly pled for his life.

3         When Vuth Hong finally gave the intruders an alarm code and safe combinations, the

4    leader instructed two of the robbers, later identified as petitioner and Vinh Huynh, to go to the

5    store and empty the safes.  Unable to enter the store and believing they had been given the wrong

6    code, the two robbers drove back to the victims' house.  Seeing police cars at the scene, they fled

7    the area.

8         While petitioner and Vinh Huynh were at the store, Srun Hong attempted to escape and

9    was shot three times, causing serious bodily injury.  When Vuth Hong tried to help his brother, he

10   was shot and killed.  One of the robbers, Chann, was shot in the abdomen by a confederate during

11   the scuffle.

12        At trial, three cooperating witnesses testified against petitioner.  Savutha Y was the

13   girlfriend of conspirator Vanthieng Van Di and knew the Hong family personally.  She met with

14   conspirators including petitioner the day before the home invasion, drove them by the Hong home

15   and the jewelry store, and drew them a map of the interior of the residence.  She was present

16   when conspirators including petitioner met on the day of the robbery to finalize their plan.

17   During the night of the robbery, petitioner was one of two men who returned to Di's apartment

18   with a code written on a piece of paper, reporting that the code and key had not worked.  There

19   were many keys on the chain, and they did not know which one to use.  After consultation with

20   Di, they left to return to the house and find out from the owner which key to use.  Savutha Y also

21   testified about petitioner's involvement in a subsequent Los Angeles computer store robbery, an

22   event which led to her arrest as well as the arrests of the defendants.

23        Vanthieng Van Di identified petitioner as one of the people who met at his apartment prior

24   to the home invasion to plan the robbery.  Di did not participate directly in the home invasion, but

25   was stationed at his apartment and received phone calls from the crew leader during the events of

26   the evening.  He also received a cell phone call from petitioner from inside the house, asking for a

27   physical description of the jewelry store owner in order to tell which of two male captives was

28   Vuth Hong.  Petitioner and Vinh Huynh came from the Hong residence to Di's apartment, where

4

1    they provided the access codes and keys to Minh Huynh.  The code numbers were confused, and

2    Minh Huynh told them to go back and get the information straightened out.

3        Vinh Tan Huynh testified that he was recruited into the conspiracy by his cousin Minh

4    Huynh.  On January 25, 1996, he went to Stockton with Minh Huynh and petitioner, drove past

5    the house they intended to rob that night, and met with other co-conspirators.  Vinh Huyn drove

6    petitioner and others to the Hong residence that night.  After waiting in the van for a while, he

7    entered the house and participated in searching the residence and taking valuables from the

8    victims.  When store owner Vuth Hong arrived, he was taken upstairs.  Vinh Huynh remained

9    downstairs; petitioner was one of the men upstairs with Hong.  Vinh Huynh overheard sounds of

10   a man in pain.  Eventually petitioner came down and told Vinh Huynh to go with him to the

11   jewelry store, because he had gotten the code.  They left in a car belonging to one of the victims.

12   They went to the store, then to Vanthieng Van Di's apartment.  Minh Huynh also came to the

13   apartment.  After some discussion, Vinh Huynh and petitioner returned to the Hong residence, but

14   made a U-turn when they saw police vehicles.

15                                LEGAL STANDARDS

16       A federal prisoner making a collateral attack against the validity of his or her conviction

17   or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to

18   28 U.S.C. § 2255, filed in the court which imposed sentence.  Tripati v. Henman, 843 F.2d 1160,

19   1162 (9th Cir. 1988).  Under § 2255, the district court may grant relief if it concludes that a

20   prisoner in custody was sentenced in violation of the Constitution or laws of the United States.

21   United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999).  Both the grounds for relief and the

22   scope of the remedy in a § 2255 proceeding are identical to those available to state prisoners

23   under § 2254, the federal habeas corpus statute.  Davis v. United States, 417 U.S. 333, 343-44

24   (1974).  To warrant relief, a petitioner must demonstrate the existence of an error which had a

25   substantial and injurious effect or influence on the verdict.  Brecht v. Abrahamson, 507 U.S. 619,

26   637 (1993); see also United States v. Montalvo, 331 F.3d 1052, 1058 (9th Cir. 2003) (Brecht

27   standard applies to habeas cases brought under § 2255 just as it does to those under § 2254), cert.

28   denied, 541 U.S. 1011 (2004).

A court should hold an evidentiary hearing on a § 2255 motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "In determining whether a hearing and findings of fact and conclusions of law are required, '[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted.'" United States v. Withers, 638 F.3d 1055, 1062 (9th Cir. 2011) (quoting United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984)). Accordingly, no evidentiary hearing is needed "if [petitioner's] allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003) (citing Schaflander, 743 F.2d at 717) (quotations omitted)). Conclusory statements in a § 2255 motion are insufficient to require a hearing. United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993).

DISCUSSION

I.      Claim One: Deficiency of the Indictment as to Hobbs Act Robbery

        A. Petitioner's Allegations

Petitioner contends that the indictment failed to state an offense under the Hobbs Act, and that the district court therefore lacked jurisdiction. Count One alleged in relevant part as follows:

> On or about January 25, 1996, in the County of San Joaquin. . . [the defendants] did knowingly and unlawfully agree and conspire to obstruct, delay and affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by armed robbery as that term is defined in Title 18, United States Code, Section 1951, by threatening physical violence against another person, to wit: the owners and employees of Phnom Pich Jewelry Store, a company which does business in foreign and interstate commerce.

Petitioner argues that this language fails to specify the substantive goal of the robbery that was the object of the conspiracy, and fails to state specific facts regarding what was to be taken or obtained from the "owners and employees" of the store. Although Claim One is not a model of clarity, petitioner appears to contend that the indictment is defective because the act that provides the nexus to interstate commerce was the planned robbery of the store, while the act that provided the element of threatened physical force was the distinct assault on the victims at the residence.

6

1    Petitioner suggests that the connection between the conspiracy to rob the store and the robbery of

2    the individual home invasion victims was legally insufficient to support jurisdiction under the

3    Hobbs Act.

4         In his traverse, petitioner attempts to clarify the basis of this claim.  He emphasizes that a

5    business cannot be robbed because it is an inanimate object, and contends that the indictment is

6    defective because it alleges a robbery at the store's address when the incident involving the use of

7    force and fear (essential elements of robbery) occurred at the residential address.

8              B.  Law of the Case

9         Respondent argues that this claim was previously presented in the pretrial motion of co-

10   defendant John That Luong, in which petitioner joined.  See ECF No. 710 (motion to dismiss

11   indictment); ECF No. 714 (joinder).  The district court denied the motion, finding among other

12   things that the indictment adequately alleged the armed robbery of a business by identifying the

13   individual victims of the crime on the basis of their relationship to that business.  ECF No. 792

14   (Order filed Aug. 18, 2006) at 4-5.  Respondent invokes the law of the case doctrine to argue that

15   this ruling forecloses "re-litigation" of Claim One in petitioner's § 2255 motion.

16        Although neither party mentions it, the August 16, 2006 order on which the government

17   relies here was withdrawn by Order filed March 14, 2007.  ECF No. 828 (ruling on co-defendant

18   Luong's motion for reconsideration).  The motion for reconsideration had expanded the

19   defendants' argument against the sufficiency of the Hobbs Act allegations, both as to mens rea

20   (an issue not presented here) and as to the relationship between the targeted business and the

21   individual victims.  ECF No. 793.  Although Judge Shubb withdrew the August 16, 2006 order,

22   he denied the motion to dismiss on all the overlapping grounds that had been presented in two

23   rounds of briefing and oral argument.  ECF No. 828 at 2.  Those grounds included the

24   indictment's failure to specify the substantive goal of the robbery that was the object of the

25   conspiracy, and failure to state specific facts regarding what was to be taken or obtained from the

26   "owners and employees" of the store.  ECF No. 793 at 15.  The court's final ruling was

27   sufficiently broad to preclude Claim One if the law of the case doctrine applies.

28        The law of the case doctrine generally precludes a court from reconsidering an issue that

1  has been previously decided by the same court, or a higher court in the same case.  United States

2  v. Alexander, 106 F.3d 874, 877 (9th Cir. 1997).  For the doctrine to apply, the issue in question

3  must have been decided either explicitly or by necessary implication in the prior disposition.

4  Thomas v. Bible, 983 F.2d 152, 154 (9th Cir.), cert. denied, 508 U.S. 951 (1993).  The doctrine is

5  not a limitation on the court's power, but a guide to discretion.  Arizona v. California, 460 U.S.

6  605, 618 (1983).  There are several exceptions to application of the law of the case doctrine, see

7  Thomas, 983 F.2d at 155, but petitioner has invoked none of them.  Instead, he contends broadly

8  that the law of the case doctrine does not apply to a § 2255 motion, which should be considered a

9  proceeding distinct from the underlying criminal case.

10       Petitioner provides no authority for the proposition that the law of the case doctrine is

11  categorically inapplicable in § 2255 proceedings.  The Supreme Court has recognized that the law

12  of the case doctrine typically applies in the § 2255 context, as do its exceptions.  See Davis, 417

13  U.S. at 342 (assuming doctrine applies, and considering exception for an intervening change in

14  law).  The Ninth Circuit has clearly stated that the doctrine applies in § 2255 cases and precludes

15  relitigation of issues previously decided.  United States v. Jingles, 702 F.3d 494, 498 (9th Cir.

16  2012), cert. denied, 133 S. Ct. 1650 (2013).  This is not a new rule.  It has been the law of the

17  circuit for decades that a collateral attack under § 2255 is the "same case" as the underlying

18  criminal matter for law of the case purposes.  Id. at 500 (citing Odom v. United States, 455 F.2d

19  159,160 (9th Cir. 1972) for that principle).[4]

20       Petitioner has presented no changed circumstances or changes in law that would support

21  reconsideration of the court's 2006 and 2007 rulings upholding the indictment.  Accordingly,

22  those rulings should not be reconsidered.  Moreover, other pretrial rulings of the district court also

23  _____

24  [4] In support of the contrary proposition, petitioner cites Alaimalo v. United States, 645 F.3d 1042, 1045 (9th Cir. 2011).  Alaimalo is inapposite.  In that case the court granted a federal prisoner's petition under 28 U.S.C. § 2241, on grounds that the petitioner was actually innocent under a

25  recent en banc decision that effectively excluded his offense conduct from the reach of the statute under which he was convicted.  Accordingly, the court held that petitioner's actual innocence

26  provided an exception to the law of the case doctrine and/or related claim preclusion principles which could otherwise have barred his claim.  The Alaimalo court's only reference to habeas

27  proceedings as distinct from the underlying criminal case involved original actions under § 2241 and § 2254, not motions under § 2255.  See id. at 1049-50.

28

1    addressed matters that overlap with Claim One.  See ECF No. 131 (petitioner's motion to dismiss

2    the indictment pursuant to United States v. Lynch, 282 F.3d 1049 (9th Cir. 2002)[5]) and ECF No.

3    175 (denying motion); ECF No. 278 (petitioner's motion for bill of particulars) and ECF No. 364

4    (denying motion); ECF No. 550 (motion for judgment of acquittal) and ECF No. 569 (denying

5    motion).  Petitioner vigorously and repeatedly challenged the sufficiency of the Hobbs Act

6    claims(s) alleged in the indictment, including on grounds presented in Claim One.  Having been

7    previously adjudicated, those challenges may not be reasserted here.

8          To the extent that Claim One challenges the indictment on grounds not previously raised

9    and rejected, which petitioner contends in his traverse is the case, the court must consider whether

10   the claim is defaulted by petitioner's failure to raise it previously.  See Jingles, 702 F.3d at 498 (if

11   issue was decided on prior appeal the previous decision is law of the case, and if the issue could

12   have been raised but was not it may be defaulted).

13              C.   Procedural Default

14         Respondent argues that Claim One is procedurally defaulted if and to the extent which it is

15   not precluded by the law of the case.  A § 2255 movant may default a record-based claim by

16   failing to raise it on direct review.  Bousley v. United States, 523 U.S. 614, 622 (1998); United

17   States v. Braswell, 501 F.3d 1147, 1149 (9th Cir. 2007).  When this occurs, the claim may be

18   raised in a § 2255 motion only if the movant can demonstrate either (1) cause and prejudice or (2)

19   actual innocence.  Id.

20         Claims challenging the sufficiency of an indictment are paradigmatic of the kinds of

21   claims that can and should be raised in the district court and presented on appeal, and are forfeited

22   if presented for the first time in a § 2255 proceeding.  See Braswell, 501 F.3d at 1149-50.  Habeas

23   review is not a substitute for appeal.  Bousley, 523 U.S. at 621.  Because Claim One could have

24   been raised on appeal, it is defaulted.

25   [5] The Lynch case held that crimes against an individual violate the Hobbs Act only if "the acts
26   deplete the assets of an individual who is directly and customarily engaged in interstate
     commerce; if the acts cause or create the likelihood that the individual will deplete the assets of
27   an entity engaged in interstate commerce; or if the number of individuals victimized or the sum at
     stake is so large that there will be some cumulative effect on interstate commerce."  Lynch, 282
28   F.3d at 1053.

9

1       In his traverse, petitioner argues that the ineffective assistance of his previous counsel

2  provides cause and prejudice to excuse default.  See United States v. McMullen, 98 F.3d 1155,

3  1157-58 (9th Cir. 1996) (discussing showing of ineffective assistance of counsel necessary to

4  establish cause and prejudice).  Petitioner's allegation of ineffective assistance is entirely

5  conclusory, however.  See ECF No. 1560 at 5.  "[T]he mere fact that counsel failed to recognize

6  the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not

7  constitute cause for a procedural default."  Murray v. Carrier, 477 U.S. 478, 486 (1986).

8  Because petitioner has alleged no more than the mere fact that an issue was omitted from

9  previous litigation, his assertion of ineffective assistance is unavailing.[6]  Absent a showing of

10  representation so deficient it violated the Sixth Amendment, attorney error will only excuse

11  default only where "the prisoner can show [that] some objective factor external to the defense

12  impeded counsel's efforts. . ."  Id. at 488.  Petitioner has alleged no facts indicating any external

13  factors that prevented Claim One from being raised on appeal.  Because he has alleged no more

14  than prior counsel's failure to raise an issue of dubious merit, petitioner cannot overcome default.

15       D.  Merits of the Claim

16       Because Claim One is precluded by the law of the case doctrine and/or procedurally

17  defaulted, extended discussion of the merits is unnecessary.  The undersigned notes, however,

18  that petitioner's theory lacks support in the law.  The indictment satisfied its necessary function of

19  setting forth the elements of the crime charged, Almendarez-Torres v.United States, 523 U.S.

20  224, 228 (1998), and informing petitioner of the nature and cause of the accusation so that he

21  could prepare a defense, Wong Tai v. United States, 273 U.S. 77, 80-81 (1927).  The indictment

22  specified that the individual victims were "owners and employees" of the business that was

23

24      [6] Petitioner does assert baldly that the indictment would have been dismissed had defense counsel

25  made the correct argument.  ECF No. 1560 at 5.  While this statement tracks the requirement for prejudice under Strickland v. Washington, 466 U.S. 668, 694 (1984), petitioner provides no

26  authorities or argument to support the allegation.  The traverse includes no discussion of the merits of the claim, and the memorandum of points and authorities in support of the Amended §

27  2255 Motion does not cite a single case dismissing an indictment on the grounds urged.  Without a showing of precedent that would require (or at even support) dismissal, there is no basis for a

28  finding of deficient performance or prejudice.

1  involved in interstate commerce.  The fact that the indictment itself did not identify the items

2  taken from the victims by force did not deprive the court of jurisdiction.  Petitioner has presented

3  no authority for his argument that a Hobbs Act violation is not stated when the use of force

4  against persons occurs "across town" from the business which provides the nexus to interstate

5  commerce.  See ECF No. 1548 at 7.  For these reasons, Claim One would not support relief even

6  if the court were able to reach the merits.  For the same reasons, the failures of trial and appellate

7  counsel to frame the issue as petitioner presents it here cannot have prejudiced him.

8      II.      Claim Two: Sufficiency of the Evidence as to Hobbs Act Robbery

9          A.  Petitioner's Allegations

10         Petitioner contends that the evidence of robbery was insufficient to support a conviction

11  under the Hobbs Act.  He argues that an unoccupied store cannot be "robbed," and that the

12  robbery of the home invasion victims had no effect on interstate commerce.  In sum, petitioner

13  contends that a robbery-related conviction under the Hobbs Act requires that the items obtained

14  by force or threat from the victims be items that moved in interstate commerce.  His argument is

15  thus predicated on the idea that all the elements of Hobbs Act robbery (taking of property from

16  the person of another, use of force, and effect on interstate commerce) must co-occur in place and

17  time.

18          B.  Law of the Case and/or Procedural Default

19         Respondent contends that Claim Two is barred by the law of the case doctrine because the

20  same (or a substantially similar) claim was presented and rejected on petitioner's Rule 29 motion.

21  That motion argued as to Count One that (1) the government had not proved that petitioner knew

22  the object of the conspiracy was to affect interstate commerce, rather than to merely obtain alarm

23  codes by committing a home invasion robbery; and (2) the government had not proved that the

24  home invasion robbery affected interstate commerce.  ECF No. 550 at 2-4.[7]  The latter argument

25  is closely related to the theory presented here, in that both focus on the asserted lack of nexus

26

27  [7] Respondent has also demonstrated that petitioner's trial counsel (and his co-defendants'
    counsel) made arguments at hearing on the motion similar to those presented in the § 2255
28  briefing.  See ECF No. 1557-4 (Reporters Transcript of hearing on Rule 29 motions).

between the violent home invasion and the jewelry store's connection to interstate commerce. The Rule 29 motion and the § 2255 motion present slight variations on the same theme: because the home invasion was a crime distinct from the attempt to steal valuables from the jewelry store, the two cannot be cobbled together to create a Hobbs Act violation. Because the claims are substantially similar, the court's precious ruling on the Rule 29 motion is the law of the case and should not be disturbed.

To the extent (if any) that Claim Two is sufficiently distinct from petitioner's Rule 29 motion to preclude application of the law of the case doctrine, the claim is procedurally defaulted. A claim of insufficient evidence can and should be raised on direct appeal, and is otherwise forfeited. See United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993).

Petitioner did appeal the denial of his Rule 29 motion. The memorandum disposition of the Ninth Circuit panel addresses a single issue related to the sufficiency of the evidence on Count One: sufficiency of the evidence that the Phnom Pich jewelry store engaged in interstate commerce. ECF No. 771 at 6-7.[8] Neither party has provided the relevant portions of petitioner's briefing on appeal. If the issue presented here was set forth in the Opening Brief, it was rejected by implication on appeal and the law of the case doctrine would apply. See Thomas, 983 F.2d at 154. If petitioner failed to present the issue, the procedural default doctrine applies. In either case, petitioner may not use the vehicle of § 2255 to raise claims that were or should have been preserved in the trial court and reviewed on direct appeal.

For the same reasons discussed in relation to Claim One, petitioner has not made a showing of cause and prejudice that will overcome his default. Even if prior counsel had performed deficiently in not raising the issue as it is presented here, there is no likelihood of a different result.

C.  Merits of the Claim

Petitioner relies on a California robbery case, People v. Hayes, 52 Cal.3d 577 (1990), which explained that a taking that is effected by force or fear but which is accomplished outside

---

[8] Citations to court documents refer to the page numbers assigned by the court's electronic docketing system and not those assigned by the parties.

1    the victim's presence is not a robbery. The example given by the <u>Hayes</u> court was of the taking

2    of information -- the combination to a safe located in an office many miles away -- from a victim

3    by force or fear, followed by use of that information by a confederate to open the safe and steal its

4    contents. Setting aside the fact that <u>Hayes</u> involves state law and not the Hobbs Act, the case

5    remains inapposite. In the <u>Hayes</u> hypothetical, no actual property was taken from the person of

6    the victim. In this case the defendants robbed the home invasion victims of personal property,

7    vehicles, and keys to the store as well as extracting the codes needed to disarm the store's burglar

8    alarm and open safes. There can be no dispute that a robbery was completed during the home

9    invasion. <u>Hayes</u> says nothing about the issue here: whether the course of conduct including the

10   home invasion and the related attempted theft of jewelry from the store can be considered a single

11   robbery for purposes of Hobbs Act conspiracy. That question has been repeatedly answered in

12   this case and should not be revisited.

13       III.      <u>Claim Three: Prosecutorial Misconduct</u>

14          A. <u>Petitioner's Allegations</u>

15       Petitioner alleges that the prosecutor misstated the law in closing argument, in violation of

16   due process, by telling the jury that victim Mr. Hong was deemed to have been "in possession" of

17   the jewelry at the store while he was being held in his home.

18          B. <u>Law of the Case and/or Procedural Default</u>

19       Respondent contends that this issue was raised on appeal and decided at least by

20   implication by the Ninth Circuit. Petitioner disputes this. Because neither party provides the

21   appellate briefs, the undersigned cannot determine whether the issue was in fact presented. The

22   Court of Appeals' decision, ECF No. 771, does not mention the prosecutor's discussion of

23   constructive possession of the jewelry.

24       Because this claim is based exclusively on the prosecutor's closing argument and does not

25   turn on any extra-record facts, it is defaulted if it was not presented on appeal. It is plain from the

26   record that petitioner did not object to the statement at trial. RT 2511-12. Petitioner's conclusory

27   assertion of ineffective assistance of counsel cannot prevent default for the reasons previously

28   explained.

1

  C.  Merits of the Claim

2

  Even if the prosecutor misstated the law, petitioner acknowledges that the jury was

3

properly instructed on the elements of robbery.  The Ninth Circuit affirmed the instructions at

4

issue.  ECF No. 771 at 7-9 & n.3.  Indeed, petitioner points to the instructions to demonstrate that

5

the prosecutor's argument was incorrect.  A jury is generally presumed to follow its instructions.

6

See Boyde v. California, 494 U.S. 370, 384-85 (1990).  Moreover, improper prosecutorial

7

argument only violates the constitution when it "so infect[s] the trial with unfairness as to make

8

the resulting conviction a denial of due process."  Donnelly v. DeChristophoro, 416 U.S. 637, 643

9

(1974).  Here, the jury was instructed that the attorney's arguments were not evidence.  RT 2690-

10

91.  The evidence against petitioner was overwhelming.  Accordingly, any misstatement by the

11

prosecutor was harmless.  Claim Three is without merit.

12

  IV.    Claim Four: Ineffective Assistance of Counsel

13

      A.  Petitioner's Allegations

14

  Petitioner alleges that his trial counsel, James Greiner, failed to advise him that he had a

15

right to testify on his own behalf.  Had petitioner understood this right, he would have testified

16

that on the date and time of the home invasion he was at a coffee shop in Oakland with Jackie Ha.

17

ECF No. 1548 at 12; ECF No. 1548-1 (Declaration of Son Van Nguyen).

18

      B.  Respondent's Opposition

19

  The government responds to Claim Four on the merits,[9] contending that petitioner's

20

allegations are false.  Respondent provides a declaration from petitioner's trial counsel, which

21

states that he repeatedly advised petitioner of his right to testify and discussed the pros and cons

22

of doing so.  When asked for a recommendation at the close of the government's case, counsel

23

recommended that petitioner not testify and explained the reasons for this recommendation.  ECF

24

No. 1557-7 (Declaration of James Greiner).

25

26

27

[9] Respondent recognizes that the procedural default doctrine does not apply to most ineffective
assistance of counsel claims, which turn on extra-record facts and therefore cannot be raised on
appeal.  See Massaro v. United States, 538 U.S. 500, 505 (2003).

28

1        C. Merits of the Claim

2            The declarations of petitioner and his trial counsel directly contradict each other regarding

3    the relevant attorney-client communications.  An evidentiary hearing would be necessary to

4    resolve the conflict if, but only if, petitioner's allegations are otherwise sufficient to support

5    relief.  United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996) (no hearing necessary if

6    allegations, viewed against the record, fail to state a claim or are otherwise subject to summary

7    dismissal), cert. denied, 520 U.S. 1269 (1997).

8            To establish a constitutional violation based on ineffective assistance of counsel, a

9    petitioner must show (1) that counsel's representation fell below an objective standard of

10   reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

11   Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

12   adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

13   errors, the result of the proceeding would have been different.  Id. at 693-94.  The court need not

14   address both prongs of the Strickland test if the petitioner's showing is insufficient as to one

15   prong.  Strickland, 466 U.S. 668 at 697.  "If it is easier to dispose of an ineffectiveness claim on

16   the ground of lack of sufficient prejudice, which we expect will often be so, that course should be

17   followed."  Id. at 689.

18           In the present case, there is not a reasonable probability of a different result had petitioner

19   testified that he was in Oakland with Jackie Ta on the evening of January 25, 2006.  Three

20   cooperating witnesses testified that petitioner was one of the five robbers who participated in the

21   home invasion in Stockton that evening.  Vinh Huyn had personally driven petitioner to the

22   residence, witnessed him go upstairs with victim Vuth Hong, and after codes and keys had been

23   obtained from Hong was ordered to go with petitioner to raid the jewelry store.  Savutha Y and

24   Vanthien Van Di witnessed petitioner's participation in planning the robbery and were present

25   when, in the midst of the home invasion, petitioner and Vinh Huyn met with Minh Huyn about

26   their problems getting into the jewelry store.  These witnesses were thoroughly cross-examined,

27   and the jury accepted their testimony.

28           Jackie Ta testified that she had spent an evening in late January with petitioner in an

15

1   Oakland coffee shop, although she could not be sure of the precise date.[10]  The defense attempted

2   to establish that it was January 25, 2006, and argued alibi.  The jury rejected the alibi defense.

3   There is no reasonable probability that the jury would have accepted that defense had petitioner

4   personally testified that was with Ta in Oakland on the date and time of the robbery.  Petitioner

5   argues in cursory fashion that his testimony would have "corroborated" Ms. Ta's, but the self-

6   interested testimony of a defendant would not likely have been accepted as meaningfully

7   corroborating by the jury.  Particularly in light of the testimony of the cooperating witnesses,

8   there is little to no chance that petitioner's proffered testimony would have affected the verdict.

9       When considered in light of the record as a whole, petitioner's allegations and affidavit

10   fail to demonstrate the reasonable probability of a different result.  Accordingly, his Strickland

11   claim fails for lack of prejudice.  There is no need for the court to resolve the disputed facts

12   regarding trial counsel's advice.  See Strickland, 668 at 689.

13       V.       Claim Five: Amendment of the Indictment

14               A.  Petitioner's Allegations

15       Petitioner contends that the indictment was impermissibly amended by imposition of a life

16   sentence on Count Three when the statute cited in the indictment, 18 U.S.C. § 924(i), carries a 10

17   year maximum term.

18               B.  Procedural Default

19       A claim of constructive amendment to the indictment can be raised on appeal, and is

20   therefore forfeited if presented for the first time in a motion under § 2255.  See Braswell, 501

21   F.3d at 1149-50.  Petitioner has presented no facts demonstrating an inability to raise this claim

22   on direct review.  Petitioner's blanket unsupported assertion of ineffective assistance of counsel is

23   unavailing, as the issue is not one that appellate counsel could be faulted for omitting.

24               C.  Merits of the Claim

25       Count Three charged petitioner with Death Caused by Use of a Firearm During a Crime of

---

[10] Ta testified as a government witness.  She was the girlfriend of Thy Chann.  She testified that on an occasion around the same time, Chann left Daly City with several of the co-conspirators including petitioner, to take care of some business.  They were gone for several days.  When she next saw Chann, he had been shot.

16

1    Violence.  The indictment identified the pertinent code section as § 924(i) because the 1996

2    version of the U.S. Code so denominated the relevant subsection.  The subsection governing

3    Death Caused by Use of a Firearm During a Crime of Violence was later re-designated as §

4    924(j).  Petitioner was sentenced in accordance with the provisions of the statute under which he

5    was charged, notwithstanding the change in alphanumeric designation.

6         The current § 924(i) indeed provides a 10-year maximum sentence, but that provision

7    never applied to Death Caused by Use of a Firearm During a Crime of Violence.  Rather, this

8    subsection governs the penalty for a violation of § 922(u) (theft of firearms from licensed dealer).

9    Petitioner was never charged with that offense.  Accordingly, there was no amendment.

10        The court and the parties were well aware that the relevant code section was re-designated

11   during the pendency of the case, and it was clear that the change was of no legal consequence.

12   See ECF No. 792 (order re: motion to dismiss) at 5 n.3; ECF No. 1557-4 at 35 (RT of 5/27/03 at

13   32).  Accordingly, Claim Five is frivolous.

14        VI.    Claim Six: Instructional Error

15             A.  Petitioner's Allegations

16        Petitioner contends that the court erred in instructing the jury regarding the intent

17   necessary to support a finding of malice aforethought on Count Three.  The court instructed as

18   follows:

19                 You may find that a defendant acted with malice aforethought if
                  you find that the defendant intended to commit the robbery or
20                attempted robbery and that a killing occurred in the course of that
                  robbery or attempted robbery.  Section 1111(a) does not require any
21                proof of intent other than that the defendant intended to commit the
                  underlying felony of robbery or attempted robbery and that the
22                killing was committed in the course of that felony.

23   RT 2704.

24        Petitioner contends that the robbery instructions given in relation to Count One had

25   omitted the necessary intent element for Hobbs Act robbery, and that the felony-murder

26   instruction was defective as a consequence.

27             A.  Law of the Case and Procedural Default

28        On appeal, petitioner challenged the district court's jury instruction on Count One on

17

1   grounds that it did not include a specific intent element.  The Ninth Circuit noted a circuit split on

2   the question whether Hobbs Act robbery requires specific intent, but declined to decide the

3   question because any error was harmless in this case.  ECF No. 771 at 7-9.  That ruling is the law

4   of the case, and forecloses the predicate for petitioner's derivative challenge to the felony-murder

5   instruction.

6        Petitioner also challenged the felony-murder instruction itself on appeal, on grounds that

7   "Hobbs Act robbery" is not a predicate crime listed in 18 U.S.C. § 1111.  The Court of Appeal

8   rejected this argument on the merits.  ECF No. 771 at 9-11.

9        Claim Six presents a variant of the issues raised on direct appeal.  To the extent it is not

10  foreclosed by the law of the case, Claim Six is procedurally defaulted because it could have been

11  presented on appeal together with petitioner's other challenges to the robbery and felony-murder

12  instructions.  See Jingles, 702 F.3d at 498.

13                                          CONCLUSION

14       For all the reasons explained above, each of petitioner's record-based claims is precluded

15  by the law of the case and/or procedurally defaulted.  The ineffective assistance of counsel claim

16  is facially insufficient to proceed.  The petition, files and records of the case conclusively

17  demonstrate that petitioner is not entitled to relief.  Accordingly, IT IS RECOMMENDED that

18  petitioner Son Van Nguyen' motion under 28 U.S.C. § 2255 be DENIED.

19       These findings and recommendations are submitted to the United States District Judge

20  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

21  after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24  shall be served and filed within fourteen days after service of the objections.  The parties are

25  ////

26  ////

27  ////

28  ////

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: August 19, 2013

4

5   ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28